## BARKER *vs.* BELL ET AL.

[CONTEST ON PROBATE OF WILL.]

1. *Will; how only can be republished.*—In this State, the republication of a will is the making of a new will, and such republication must be made with all the formalities required by law.

2. *Same.*—A will with the name of the maker and the names of all the subscribing witnesses save one torn off, can not be republished without a new signing and attestation, as required by the statute in the case of making a new will, where it appears that the cancellation was committed by the testator himself with the intention to cancel the will; and

this, although after such cancellation, the testator may have spoken of such canceled will as " his will."

3. *Probate court; rules of evidence in.*—The same rules of evidence govern in trials of contested wills as in courts of common law. Interest does not disqualify a legatee from testifying.

4. *Witness, recall of; rests in discretion of court.*—It rests in the sound discretion of the court to allow a witness to be recalled. Where a witness is recalled against the objection of the party summoning him, after he had dismissed him, such witness is the witness of the party so calling him back, and can not be impeached by such party.

APPEAL from Probate Court of Cleburne.
Tried before Hon. W. R. HUNNICUTT.

The facts are set out in the opinion.

JAS. AIKIN, SOL. PALMER, and T. J. BURTON, for appellant. A will once revoked, in this State, can not be republished by parol.— *Witter v. Mott*, 2 Conn. 67; 1 Redfield, 374, § 14; *Love v. Johnson*, 12 Iredell, 355; 9 *ib.* 280; *Jackson v. Holloway*, 7 Johns. 394; *Jackson v. Potter*, 9 Johns. 312; 4 Desaussure, 305; 3 *ib.* 346; 1 Williams on Ex'rs, side p. 103.

The English statute of frauds is a part of the American common law. When section 1933 was enacted by the legislature, it was with reference to what was then the law of the land.

Therefore, they meant by the phrase, " duly republish the previous will," the re-execution of it, with the same formalities as if he were executing an original will.—See Rev. Code, § 1933.

Section 1913 of Revised Code passes all the real estate of testator at his death.

It is admitted by appellees that a will can not be republished so as to convey after acquired real estate, but under the above section it would convey that as well as any other.

Does the law prohibit a testator from revoking a written will, except by the same formalities as are observed in its execution, or by tearing, &c., and yet *republish* one which has been revoked *by parol ?*—See Rev. Code, § 1933.

15

2. Even if a will could be republished by parol, the evidence in this case is wholly insufficient. It is all set out, on this point, in the bill of exceptions.—1 Williams on Ex'rs, 103, *et seq.;* Lomax.

ELLIS & CALDWELL, and FOSTER & FORNEY, *contra.*—When a will is found among the papers of the testator immediately after his death, in a mutilated condition, the presumption of law is that the mutilation is his act, and was done for the purpose of revocation ; but rather the contrary is to be inferred when it is found two days afterwards in the possession of one who has an interest to defeat the will, or if it has been for that length of time under her control.—*Bryant Bennett, ex'r, v. Elizabeth Shenace,* 3 Ired. (Law) 303.

A republication may be by a re-execution, or by an act or declaration of the testator, that he intended the instrument which had been revoked should operate as his will. Bouv. Inst., 2 vol., 464.

This may be by parol, except in the case of after acquired lands, which will not pass by a parol republication. 5 Bacon Abr. 320 ; *Harvard v. Davis,* 2 Binney, 406 ; *Jones v. Hartley,* 2 Wheat. 103.

It is true that in England, since the statute of frauds, a will in writing can not be revoked by a parol republication of a former will. But the English statute contains this provision which our statute does not : " That no will shall be revoked except, &c., unless by some other will *in writing, or other writing* of the testator, signed in the presence of three or four witnesses, declaring the same." Our statute provides how a will may be revoked, but does not provide how it may be republished ; leaving the republication as at common law, unaffected by the English statute of frauds, or by the statute of other States.—*Barnes v. Crow,* 1 Ves. 485 ; Jarman on Wills, vol. 1, p. 199 ; Com. Digest, 365 ; Powell on Devises, 652.

The second will was destroyed with the express intention of reviving the first, the will in question. The act of canceling that will and the declaration of republishing the

first will, were one and the same transaction, and did have the effect of republishing the present will.—*Jackson v. Potter*, 9 Johns. 314, and cases cited in note ; *Burns v. Burns*, 4 Serjt. Rach, 295.

A parol republication might not pass after purchased lands, but no such question arises in this case on the charge given.—*Jackson v. Potter*, 9 Johns. 314 ; *Jackson v. Holloway*, 7 Johns. 394 ; *Lessee of Reynolds v. Shirley*, 7 Hammonds, (Ohio) 363.

To pass after acquired lands, there must be not only a republication, but a *re-execution*. Not so in this case.— Roberts on Wills, 477 ; Ram. on Wills, 165.

A will may be republished so as to *enlarge the operation* of the words used in a will, or it may not, as there may be more property for them to operate on, if property has been purchased by the testator. In this case, the republication does not affect the sense or operation of the words used in the will.—Roberts on Wills, 477 ; *Reynolds v. Shirley*, 7 Hammond, 363.

At common law, a will might be revoked or republished by parol. Our Code (§ 1932) provides how wills may be revoked, changing the common law, but is silent on the subject of republishing (§ 1933) ; consequently, it may be fairly presumed the legislature did not intend to change the common law on the subject of republication.

At common law, the cancelation of a second will republished the first ; then there was not merely a cancellation or destruction of the second will, but it was accompanied with an express intention of reviving the first will.— *Goodnight v. Gleezie*, 4 Barr, 251–2.

PETERS, J.—This is a proceeding on the contest of a will before its probate, under our statute. There was a jury trial in the court below, and a verdict in favor of the will offered for probate, and a judgment of the court allowing the probate of the instrument offered, according to the verdict.

The evidence tends to show that there were two wills made by the decedent, Wm. M. Bell. The one was made

in January, 1868, and the other in May or June, 1868. This latter will was not produced on the trial, and there was no written evidence to show that it had been revoked or canceled. The testamentary paper of January, 1868, was the will offered for probate, and the one that was established by the decree of the court. It disposes of the real and personal estate of the testator. The issue covered all the ground of contest that could be made on such an instrument. The evidence tends to establish the allegation that it had been regularly made and attested, and declared to be the will of the party making it, to-wit, said Wm. M. Bell, as required by the Code. But after the death of Bell, the alleged testator, it was found in possession of his widow, with his name torn off and the names of the attesting witnesses very much mutilated, so as to leave all but one illegible. The name of the alleged maker could not be read at all, and the full name of only one of the attesting witnesses, of whom there were three, remained legible. There was proof going strongly to show that these obliterations had been made by the testator himself, while the will was in his possession ; that he had handed it to his wife, or she had gotten it from his pocket, and that it was so obliterated when she obtained it, and that he had then declared that the obliteration was his work, and he intended it as a cancellation of the will. There was no testimony that this will had been canceled or torn by any other person. There was proof, also, that the testator had spoken of this paper, after the making and publication of the subsequent will of May or June, 1868, as " his will," and declaring that he had destroyed the will of May or June, 1868. This was in April, 1870, just before decedent's death.

On this evidence the court gave several charges to the jury which were excepted to by the contestants, and refused to give several others which were asked by the contestants, and the refusals were each made the basis of an exception. It is not necessary to notice the exceptions arising on the charges given, as like questions arise on the

charges refused. One of these charges is recited ·in the record in the following terms :

"The contestants asked the court to charge the jury in writing, that the testator could not republish the will propounded by parol declarations alone."

This charge should have been given. To refuse it was error.

The Code is intended to contain all the statute law of this State of "a public nature, designed to operate upon all the people of the State up to the date of its adoption, unless otherwise directed in the Code."—Code, § 10. This law is not merely cumulative of the common law, and made to perfect the deficiencies of that system, but it is designed to create a new and independent system, applicable to our own institutions and government.—Rev. Code, § 10. In such case, where a statute disposes of the whole subject of legislation, it is the only law. Otherwise, we shall have two systems, where one was intended to operate, and the statute becomes the law only so far as a party may choose to follow it. Besides, the mere fact that a statute is made, shows that so far as it goes, the legislature intended to displace the old rule by a new one. On some questions the common law conflicts more or less with our constitutional law, and is necessarily repealed and displaced and repealed by it. And on others it has, by lapse of ages, and mistakes inevitably attendant on all human affairs, become uncertain and difficult to reconcile with the principles of justice. Hence, the legislature intervenes to remove such difficulties, uncertainties and mistakes, by a new law. This new law, to the extent that it goes, necessarily takes the place of all others. For it would be illogical to contend that the old rule must stand, as well as the new one, because this would not remedy the evil sought to be removed and avoided.

Judged upon these principles, the statute law found in the Code, and such others as may have been since enacted on the subject of wills, in this State, include the whole law upon the making of wills, and their revocation, and the making of other wills in the place of those revoked.—Rev.

Code, § 420, Chap. II, *ad finem.* A will made in conformity with the requirements of this law, without fraud or undue influence, is valid as a testamentary disposition of the maker's estate. But if it is not so made, it can have no force as a will. Under this statute, the revocation by cancellation or obliteration, by the testator himself, destroys the instrument. From the date of the revocation, the will revoked ceases to be a testamentary disposition of the maker's estate. Such revoked will is nothing. It can have no effect as a will. And if the party who made it desires to make a testamentary disposition of his estate, he must make a new will, in the manner required by the statute. But in doing this, he may use the same form of words, without variations or with variations, as often as he pleases, and the same written or printed document that was used at first, but the process of making the will must be the same each time ; that is, it must be done as prescribed by the statute. By our law, there can be no republication of a will that has been revoked by tearing off the names of the maker and the attesting witnesses, unless the will is re-signed and re-attested, as required by the statute. The signing of the will and the attestation of this signature are essential formalities that can not be dispensed with.—Rev. Code, §§ 1910, 1930–1 ; *Powell's Distr. v. Powell's Legatees,* 30 Ala. 697, 705 ; *Riley v. Riley,* 36 Ala. 496 ; 1 Redf. Wills, p. 191, bottom, §§ 206–7. The charge asked, as above set out, was confined to the instrument offered for probate in this case. The proof in this instance is not sufficient to establish the republication of such a will. Where a testator has made two wills, and wishes to destroy the one last made and revive the one first made, both of which have been duly executed, he may do so by the cancellation or destruction of the last made will, and the due republication of the previous will. But this due republication of the previous will can not be made of a will mutilated and canceled by the testator himself, without a re-making of the same, as required by the statute. Otherwise, a paper without the signature of the testator, and without attesting witnesses, might become a will.

This, except in certain cases, (and this is not one of the excepted cases,) the law forbids.—Rev. Code, §§ 1932-4, 1936; *Jackson v. Holloway*, 7 Johns. 394 ; *Jackson v. Rodgers et al.*, 9 Johns. 312 ; 1 Redf. Wills, p. 354, bottom, §§ 373-4 ; *James v. Marvin*, 3 Conn. 576 ; 10 Bac. Abr. Bouv. p. 505. A republished will is a new will, and it must have all its parts complete.—1 Williams on Ex'rs, 113, 121, margin. This instrument can not be made a new will without the testator's signature, and the signatures of the proper number of attesting witnesses. These requisites it does not possess.—Rev. Code, § 1930 ; 1 Redf. Wills, 347, bottom, *et seq.*

In all matters in relation to the evidence and mode of proceeding in the court of probate on the contest of a will, where there is no special exception, the court must proceed and be governed by the same rules and regulations as courts of common law.—Rev. Code, § 1962.  In such a contest, the legatees are competent witnesses for the proponent, or for the contestant.—Rev. Code, § 2704 ; Pamph. Acts 1866-7, p. 335, No. 403.  The court did not err in permitting one of the legatees to testify in favor of the validity of the will.

The conduct of the trial is under the sound discretion of the court.  The court may therefore allow a witness to be called back for re-examination, but can not compel either party to call back his witness, unless he choose to do so. In case a witness is so called back after being dismissed by the party who summoned him, he becomes the witness of the party calling him back against the objection of the other party ; and such witness can not be impeached by the party so calling him back.  In this view of the law the contestants were not injured, as the testimony strengthened their case.

The other exceptions are such as are not likely again to arise on a new trial.  I therefore omit their consideration.

The judgment of the court below is reversed, and as the parties are entitled to a trial by jury, (Rev. Code, § 1956,) the cause is remanded and a new trial is ordered.